1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8  | KENDRA ANN YOUNG,

9                                   Plaintiff,

10 | v.

11 | CAROLYN W. COLVIN, Acting
   | Commissioner of Social Security,

12

13 |                               Defendant.

NO.  C14-81-JLR-JPD

REPORT AND
RECOMMENDATION

14        Plaintiff Kendra Ann Young appeals the final decision of the Commissioner of the

15 Social Security Administration ("Commissioner") which denied her applications for Disabled

16 Adult Child Benefits ("DAC") and Supplemental Security Income ("SSI") under Titles II and

17 XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18 administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19 the Commissioner's decision be reversed and remanded for further administrative proceedings.

20 Although plaintiff requests oral argument, the undersigned finds such argument to be

21 unnecessary here.

22                    I.        FACTS AND PROCEDURAL HISTORY

23        At the time of the administrative hearings, plaintiff was a 28 year old woman with a

24 ninth grade education.  Administrative Record ("AR") at 58-59.  Her past work experience

REPORT AND RECOMMENDATION - 1

includes employment as a fast food worker.  AR at 88-90.  Plaintiff was last employed in 2002.  AR at 288, 291.

On August 11, 2009, plaintiff protectively filed a claim for SSI payments.  AR at 277-85.  On April 26, 2012, she filed an application for DAC, alleging an onset date of January 1, 2000.  AR at 268-76, 293-94.  For purposes of DAC benefits, plaintiff attained the age of 22 in 2005. *See* AR at 293.  Plaintiff asserts that she is disabled due to depression and psychosis.  AR at 312.

The Commissioner denied plaintiff's SSI claim initially and on reconsideration.  AR at 142-45, 149-54.  Plaintiff's requested hearings took place on January 23, 2012, and April 27, 2012.  AR at 42-139.  On May 10, 2012, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on a finding that plaintiff could perform work as a cleaner/housekeeper, folder, and price marker, which exist in significant numbers in the national economy.  AR at 19-41.

Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-7, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On January 17, 2014, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. No. 1.

## II.       JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.      STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

(9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

whole, it may neither reweigh the evidence nor substitute its judgment for that of the

Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed

and further administrative proceedings would serve no useful purpose."  *McCartey v.*

*Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

(9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
> claimant's evidence; (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made; and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled if he
> considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Ms. Young bears the burden of proving that she is disabled within the

meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in

any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

REPORT AND RECOMMENDATION - 3

expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On May 10, 2012, the ALJ issued a decision finding the following:

1.    The claimant has engaged in substantial gainful activity during the following periods: 01/01/2007 through 12/31/2007.

2.    However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

3.    The claimant has the following severe impairments: polysubstance abuse or dependence (currently in remission), depression with psychosis, and post-traumatic stress disorder.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to do work that is low

stress, meaning that it consists of simple and repetitive tasks, that does not require more than superficial interaction with the general public or coworkers, does not require exercising more than rudimentary judgment, and does not require learning new tasks once the job's tasks are learned.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1983 and was 25 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[2]

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, since October 19, 2006, the date she originally alleged disability to have begun, or since August 11, 2009, the date the application was filed.

AR at 24-34.

## VI.    ISSUES ON APPEAL

As identified by plaintiff, the principal issues on appeal are:

1. Whether the ALJ properly concluded the plaintiff had been engaged in SGA;

2. Whether the ALJ improperly disregarded medical evidence;

3. Whether the ALJ failed to properly consider plaintiff's subjective complaints and failed to properly consider issues of witness credibility;

4. Whether the ALJ failed to consider evidence of claimant's application for Title II Adult Disabled Child benefits;

5. Whether the Commissioner failed to consider the record as a whole (and failed to fully develop the record);

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

6.      Whether ALJ erred at Step 5 given the evidence that claimant would be off task;

7.      Whether the ALJ erred in failing to fully describe claimant's mental functional limitations in his decision pursuant to 20 CFR § 416.920a(3)(e) and 20 CFR § 404.1520a, *et seq.*

Dkt. No. 18 at 2.

VII.    DISCUSSION

A.      The ALJ's Step-One Determination

Plaintiff argues the ALJ improperly determined plaintiff engaged in substantial gainful work in 2007. Dkt. 18 at 8-12. Defendant argues this finding was appropriate because plaintiff's reported earnings from prostitution were over the presumptive threshold for substantial gainful activity, and because plaintiff's work as a prostitute "required significant mental and physical exertion." Dkt. 19 at 15 (citing *Dotson v. Shalala*, 1 F.3d 571, 577-78 (7th Cir. 1993); *Corrao v. Shalala*, 20 F.3d 943, 948-49 (9th Cir. 1994)). This Court disagrees that prostitution can constitute substantial gainful activity.

An individual who is engaged in "substantial gainful activity" ("SGA") is not disabled. 42 U.S.C. § 423(d) (1) (A); *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995); 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is activity that is both "substantial" and "gainful." 20 C.F.R. §§ 404.1572, 416.972 (definition of SGA). "Substantial work activity" involves "significant physical or mental activities" and may include part-time work and work that pays less or involves fewer responsibilities than previous work. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful" work activity is work activity that is "usually done for pay or profit." [3]

_____

[3] Earnings may show that an individual is engaged in SGA. 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1). An individual earning more than a certain amount each month is presumed to be engaged in SGA. *Katz v. Sec'y of Health & Human Serv.*, 972 F.2d 290, 293 (9th Cir. 1992) (earnings beyond a certain guideline create a rebuttable presumption of SGA). (citing *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990)); 20 C.F.R. §§ 404.1574(b)(2), 416.974(b) (2) (setting forth the monthly guideline). Part-time work that pays less than full-

20 C.F.R. §§ 404.1572(b), 416.972(b).  It is the claimant's burden to show that he or she is not

engaged in substantial gainful activity. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987);

*see also Tackett*, 180 F.3d at 1098 (citation omitted).  However, "the ALJ shares the burden at

each step" due to the affirmative duty of the ALJ to assist in the development of the record as

well as the non-adversarial nature of the social security application process. *Id*.  Here, the

record supports that plaintiff did not engage in SGA in 2007.

Forced prostitution does not and cannot constitute SGA, and the ALJ erred by

suggesting and concluding that it should be so considered.  Moreover, the Commissioner's

attempted defense of the ALJ's action is offensive -- "her illegal work activity required

significant mental and physical exertion."  Dkt. 19 at 15.  To carry this argument through to its

logical conclusion, practically any person who previously engaged in prostitution would be

barred from receiving disability benefits, because that person would probably be able to

perform his or her past relevant work.  Clearly such a result would be at odds with the policy

surrounding the disability components of SSI and DIB.

The Commissioner cites *Dotson*, 1 F.3d at 577-78 (finding evidence of substantial

gainful activity where claimant engaged in planning and executing thefts and subsequent

resale, and in lifting and carrying stolen items) to support its position.  Even if this Court were

to consider following *Dotson,* which it will not, the record fails to support the Commissioner's

position.  The plaintiff was working involuntarily for a pimp.  All of her "earnings" were

turned over to him.  There is nothing in the record indicating that this "work" involved any

significant mental activity on her part.  If the "job" involved significant physical work on her

time work can still be SGA.  *Katz*, 972 F.2d at 292 (citing *Keyes*, 894 F.2d at 1056); 20 C.F.R.
§§  404.1572(a), 416.972(a)("Your work may be substantial even if it is done on a part-time
basis or if you do less, get paid less, or have less responsibility than when you worked
before")).

part, then the record is silent on this issue as well.  Accordingly, even if, as a policy matter, forced prostitution were to be considered appropriate work for SGA purposes, contrary to this Court's holding, reversal in this specific case would still be required by *Corrao*, 20 F.3d at 948-49 (finding drug dealing did not constitute substantial gainful activity where plaintiff did not engage in planning or organizing drug deals, and spent less than one hour a day, the majority of which was spent as a passenger in a car, purchasing drugs).  Here, as in *Corrao*, "there is no indication of initiation, organization, responsibility or physical or mental exertion by [plaintiff] as is required for [substantial gainful activity]."  20 F.3d at 948-49; *see* AR at 60-61.  As such, the ALJ erred at step one by finding plaintiff engaged in substantial gainful activity in 2007.  On remand, the ALJ will not consider this activity as SGA.

  B. <u>The ALJ's Evaluation of the Medical Evidence</u>

   Plaintiff also argues the ALJ erred in his assessment of the medical evidence of record.  Dkt 18 at 12-15.  Specifically, plaintiff argues the ALJ erred by failing to fully credit the medical opinions of plaintiff's treating psychologist Anya Zimberoff, Psy.D., and of examining psychologists George Ankuta, Ph.D., Jesse McClelland, M.D., and Wayne Dees, Psy.D.  This Court agrees that the ALJ erred in his assessment of this evidence.

   As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

1

    1.  *Treating Psychologist Anya Zimberoff, Psy.D.*

2

  Plaintiff argues the erred by failing to credit the medical opinion of plaintiff's treating

3

psychologist Anya Zimberoff, Psy.D. Dkt. 18 at 13-24. Dr. Zimberoff treated plaintiff on and

4

off from 2008 to 2012. AR at 852; *see also* AR at 489-556, 693-760. Dr. Zimberoff wrote two

5

letters on plaintiff's behalf, the first in 2009, and the second in 2012. AR at 489-90, 852. In

6

2009, Dr. Zimberoff opined plaintiff was markedly impaired in her daily functioning due to

7

depression and psychosis, explaining plaintiff "is plagued by a running commentary of voices[,

8

which] threaten her death and urge her to give up hope. [She] also suffers from dissociative

9

states and is often unable to follow through with the completion of simple tasks." AR at 489.

10

Because of plaintiff's dissociative symptoms, Dr. Zimberoff opined "she is unlikely to be able

11

to learn new tasks or follow through on even simple chores or assignments." AR at 489. Dr.

12

Zimberoff noted at the time the 2009 letter was written, plaintiff could not "tolerate the stress

13

of even simple work demands and she cannot get along well with other team members." AR at

14

489. In 2009, Dr. Zimberoff also explained plaintiff's symptoms persisted despite treatment.

15

AR at 490. She concluded plaintiff "is not yet ready to participate in work training or

16

schooling activities, as restoring basic daily functioning and a normal daily rhythm and routine

17

should take precedence." AR at 490. Dr. Zimberoff based these opinions on her prior

18

treatment visits with plaintiff, and contemporaneous mental health evaluation, which included

19

a mental status examination and diagnostic review. AR at 489, 527-28.

20

  In 2012, Dr. Zimberoff drafted a second letter. AR at 852. In this letter, Dr. Zimberoff

21

discussed plaintiff's addiction to pain medication, describing it as "self medication." AR at

22

852. Dr. Zimberoff opined plaintiff was "severely disabled" by anxiety, panic, auditory

23

hallucinations, and depression, and that plaintiff suffered from symptoms of post traumatic

24

stress disorder related to a history of childhood sexual abuse by her father, and later abuse by

1   foster parents.  AR at 852.  Dr. Zimberoff noted plaintiff struggled with "going out" and

2   regulating her emotions.  AR at 852.  Dr. Zimberoff observed that even with psychotropic

3   medication, plaintiff continued to experience depressive and psychotic symptoms.  AR at 852.

4   Dr. Zimberoff concluded that "it is unlikely [plaintiff] will be able to be gainfully employed for

5   the next 4-5 years."  AR at 852.

6        The ALJ rejected Dr. Zimberoff's opinions because Dr. Zimberoff's letters did not

7   address the full extent of plaintiff's chemical dependency issues or their impact on plaintiff's

8   mental health symptoms.  AR at 31.  The ALJ also rejected Dr. Zimberoff's opinion because

9   "she did not have all of the evidence which is in the present disability file" and because "she

10  was not aware of [plaintiff's] lack of credibility, which impinges her ability to provide an

11  accurate opinion."  AR at 31.  The ALJ noted Dr. Zimberoff did not provide objective medical

12  testing to support her conclusions regarding the severity of plaintiff's impairments.  AR at 31.

13  Lastly, the ALJ noted Dr. Zimberoff treated plaintiff only occasionally, which limited the

14  scope of Dr. Zimberoff's knowledge of plaintiff.  AR at 31.  These are not specific and

15  legitimate reasons supported by substantial evidence in the record.  *See Bayliss,* 427 F.3d at

16  1216.

17       Contrary to the ALJ's determination, Dr. Zimberoff's opinions regarding plaintiff's

18  limitations were based on objective medical evidence, namely the mental status examination

19  completed in 2009.  AR at 490, 527-28 (noting hypoactive psychomotor behaviors, soft

20  speech, erratic/inconsistent memory, clouded consciousness, poor concentration, poor

21  judgment, vague thought processes, auditory hallucinations, compulsions, dissociation, and

22  suicidal ideation in thoughts).  "Like the physical examination, the Mental Status Examination

23  is termed the *objective* portion of the patient evaluation."  Paula T. Trzepacz and Robert W.

24  Baker, The Psychiatric Mental Status Examination 4 (Oxford University Press 1993) (emphasis

REPORT AND RECOMMENDATION - 12

in original); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology.  The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (*quoting Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981))).  For this reason, the ALJ's rejection of Dr. Zimberoff's opinion is not supported by substantial evidence in the record.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion).

It is also important to note that the ALJ found plaintiff's substance abuse to be a severe impairment.  AR at 25.  For this reason, the ALJ must consider the limitations and restrictions attributable to plaintiff's substance abuse.  20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945; *See* SSR 96-8p, 1996 WL 374184 *5 (adjudicator must consider the limitations and restrictions attributable to all of claimant's medically determinable impairments); *see also Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001) (ALJ must first conduct the five-step sequential-evaluation process and conclude that the claimant is disabled prior to determining whether substance abuse is material to disability).  Here, however, the ALJ appears to discount Dr. Zimberoff's opinions regarding plaintiff's symptoms and limitations, at least in part, because Dr. Zimberoff was not aware of plaintiff's substance abuse in 2009.  *See* AR at 31.  The record reflects, however, that Dr. Zimberoff learned of plaintiff's substance abuse, as well as plaintiff's engagement in agnostic therapy, no later than June 2011.  *See* AR at 700-01.  Dr. Zimberoff specifically discussed plaintiff's addiction and treatment in the 2012

1    letter.  AR at 852.  For these reasons, the ALJ's rejection of Dr. Zimberoff's opinion on this

2    basis is also an error.

3                  *2.*       *Examining Psychologist Wayne Dees, Psy.D.*

4          Plaintiff argues the ALJ erred by rejecting the medical opinion of examining

5    psychologist Wayne Dees, Ph.D.  Dkt. 18 at 15.  Dr. Dees completed a psychological

6    evaluation of plaintiff in 2009 that included a clinical interview, mental status examination,

7    and multiple psychometric tests including the Burns Depression Inventory, Becks Anxiety

8    Inventory, Hamilton Depression Scale, Mood Disorder Questionnaire, and Personality

9    Assessment System.  AR at 482-88.  Based on this assessment, Dr. Dees opined plaintiff had

10   marked limitations in the ability to: exercise judgment and make decisions; respond

11   appropriately coworkers and supervisors; interact with public contacts; and respond

12   appropriately to and tolerate the pressures and expectations of a normal work setting.  AR at

13   485.  Dr. Dees defined marked as a very significant interference with basic work-related

14   activities.  AR at 483.

15         The ALJ rejected portions of Dr. Dees' medical opinion consistent with a finding of

16   disability because plaintiff was not forthcoming with Dr. Dees regarding her history of alcohol

17   and substance abuse, and because the results of the mental status examination conducted by Dr.

18   Dees relied heavily on plaintiff's self-reported symptoms, which the ALJ found not credible.

19   AR at 30-31.  This is not, however, a specific and legitimate reason supported by substantial

20   evidence sufficient to reject the opinion of an examining psychologist.  *See Bayliss,* 427 F.3d at

21   1216.

22         Defendant argues the ALJ properly rejected Dr. Dees' opinion because Dr. Dees'

23   assessed limitations were based on plaintiff's reports, which were not credible.  Dkt. 19 at 9

24   (citing *Tonapetyan v. Halter*, 242 F.3d. 1144. 1149 (9th Cir. 2001)).  Although the ALJ

REPORT AND RECOMMENDATION - 14

1   articulated a legally sufficient basis for rejecting Dr. Dees' medical opinion, the ALJ's finding

2   is not supported by the evidence.  Contrary to the ALJ's finding, Dr. Dees did not base his

3   opinion largely on plaintiff's subjective complaints.

4        As discussed previously, in addition to a mental status examination, Dr. Dees

5   administered plaintiff multiple psychometric tests that revealed marked to severe mental

6   impairment.  AR at 487-88 (scoring in the severe range on the Burns Depression Inventory,

7   Burns Anxiety Inventory and Hamilton Depression Scale, and responses to the personality

8   assessment indicating marked overall impairment).  It is notable that the ALJ fails to discuss or

9   acknowledge this testing in the decision.  It is also noteworthy that Dr. Dees is the only

10  psychologist in the record to complete psychometric testing in additional to performing a

11  clinical interview and mental status examination.  Despite this fact, the ALJ gave less weight to

12  Dr. Dees' opinion than the opinions of other examining psychologists including Drs.

13  McClelland and Ankuta, who completed no similar testing.  *See* AR at 30-31.

14       In addition to obtaining results from psychometric testing, Dr. Dees made several

15  clinical observations of plaintiff during the course of the evaluation.  AR at 487 (speech soft

16  and slow, presented as tense with psychomotor retardation, tearful affect, anxious and

17  depressed mood).  Taken as a whole, these objective findings support Dr. Dees' conclusions

18  regarding plaintiff's functional limitations.  Contrary to the ALJ's determination, there is

19  "nothing in the record to suggest" Dr. Dees relied on plaintiff's own "description of her

20  symptoms . . . more heavily than his own clinical observations."  *Ryan v. Comm'r of Soc. Sec.*

21  *Admin*, 528 F.3d 1194, 1200 (9th Cir. 2008).  For these reasons, the ALJ's rejection of Dr.

22  Dees' medical opinion is an error.  *Id*.

23

24

3.      *Examining Psychiatrist Jesse McClelland, M.D.*

Plaintiff also argues the ALJ erred by failing to adopt or reject Dr. McClelland's opinion that plaintiff may struggle to maintain regular attendance and to complete a normal work day and work week without interruptions from psychiatric conditions based on plaintiff's ability to maintain activities of daily living, and may struggle with the usual stress encountered in the workplace based on plaintiff's inadequate coping skills.  Dkt. 18 at 14 (citing AR at 613).  It is notable that defendant does not address this argument in her brief.

Here, the ALJ purported to give significant weight to the opinion of Dr. McClelland, yet failed to address significant portions of Dr. McClelland's opinion.  *See* AR at 30.  The Commissioner "may not reject 'significant probative evidence' without explanation."  *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))).  The "ALJ's written decision must state reasons for disregarding [such] evidence."  *Flores*, 49 F.3d at 571.

Dr. McClelland's opinion is significant because it appears to suggest a higher level of functional limitation than accommodated by the ALJ in the residual functional capacity determination, which includes no limitation regarding the ability to maintain regular attendance or complete a normal workday or workweek without interruptions.  *See* AR at 27; *see also* AR at 97 (vocational expert testimony that the acceptable absentee rate for jobs relied on by the ALJ at step five is no more than one day a month), 101 (vocational expert testimony that an individual could not complete a normal workday and complete their tasks would not be able to keep a job).  For these reasons, the ALJ erred by failing to discuss, adopt, or specifically reject these aspects of Dr. McClelland's opinion.  *See Flores*, 49 F.3d at 570-71.

4.      *Examining Psychologist George Ankuta, Ph.D.*

Plaintiff also argues the ALJ, in giving great weight to the medical opinion of examining psychologist George Ankuta, Ph.D., erred by failing to acknowledge or discuss portions of Dr. Ankuta's opinion that were equivocal regarding plaintiff's social limitations. Dkt. 18 at 14-15.  For example, Dr. Ankuta wrote plaintiff "was 20 minutes late for the scheduled appointment, which can only result in less time for evaluation even if the appointment can be extended into overtime.  In this way she has sabotaged her evaluation." AR at 910-11.  Dr. Ankuta further noted that plaintiff "does not describe her experiences with people in much detail."  Dr. Ankuta then concluded plaintiff "may have difficulty functioning socially in a competitive work situation, and may have difficulty tolerating the emotional stress of competitive work."  AR at 910-11.

Dr. Ankuta's acknowledgment that plaintiff "sabotaged her evaluation" by appearing late, raises doubt as to the reliability of Dr. Ankuta's conclusions regarding plaintiff's limitations.  As plaintiff points out, the ALJ failed to acknowledge this shortcoming of Dr. Ankuta's evaluation, and failed to explain his interpretation and resolution of this deficiency. *See Flores*, 49 F.3d at 570-71 (The Commissioner "may not reject 'significant probative evidence' without explanation."); *see also Reddick*, 157 F.3d at 725 (ALJ may properly weight medical evidence "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.").  This ambiguity is significant because the ALJ relied on Dr. Ankuta's opinion to find that plaintiff has the ability to persist in low stress, simple repetitive tasks as long as social contact is reduced.  AR at 30.

For example, in weighing Dr. Ankuta's opinion, the ALJ noted when the opinions of Drs. McClelland and Ankuta are combined, they "support a finding that [plaintiff] is capable of persisting in low stress/simple repetitive teaks, particularly when other stressors, such as

contact, are reduced." AR at 30.  The ALJ credited Dr. Ankuta with clarifying that plaintiff "had greater functional abilities, particularly when outside stressors, such as public contact, were limited." AR at 30 (citing generally AR at 907-15).  Yet, it is unclear from the ALJ decision, or this Court's review of the record, what portion of Dr. Ankuta's opinion the ALJ relied on to support this finding.   Moreover, this finding contradicts Dr. Ankuta's admission that plaintiff did "not describe her experiences with people with much detail" during the examination.  AR at 911; *see also* AR at 913 (Dr. Ankuta noting that "[Plaintiff] does not describe with much detail her relationships at work or with her boyfriends or children").  For these reasons, the ALJ's assessment of Dr. Ankuta's opinion is not based on substantial evidence in the record.  *See Richardson*, 402 U.S. at 401.

Based on the foregoing errors, the ALJ's decision should be reversed and remanded for further administrative proceedings to reevaluate the medical opinions of plaintiff's treating and examining doctors.  Based on this reassessment, it may also be necessary for the ALJ to further develop the vocational record regarding the impact of the limitations opined by plaintiff's treating and examining sources on plaintiff's ability to work.

C.       The ALJ's Assessment of Plaintiff's Credibility and Lay Witness Testimony

Plaintiff also raises issue with the ALJ's assessment of plaintiff's credibility, and the lay witness testimony of plaintiff's brother. Dkt. 18 at 16-17.  The Court already has concluded that the ALJ erred in reviewing the medical evidence, and that this matter should be reversed and remanded for further consideration.  In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence.  *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).  Similarly, an assessment of lay witness testimony relies in part on an assessment of the consistency of this testimony with other evidence in the record, including medical evidence.  *See* SSR 06-03p, 2006 WL 2329939 *5.  Therefore, plaintiff's credibility,

as well as the testimony of plaintiff's brother, should be assessed anew following remand of this matter.

####     D.     Plaintiff's Other Assignments of Error

Plaintiff also argues the ALJ erred by denying plaintiff's application for DAC benefits and by failing to fully develop the record regarding plaintiff's mental limitations.  Dkt. 18 at 17-20.  To be eligible for DAC benefits, plaintiff must establish disability under the Social Security Act prior to her 22nd birthday.  20 C.F.R. § 404.350(a)(5).  Plaintiff further contends the Commissioner erred in her consideration of the evidence submitted to the Appeals Council. Dkt. 18 at 17-19; see AR at 971-96 (concerning plaintiff's mental health treatment from 1997 to 2000).  The Court may review new evidence presented first to the Appeals Council when determining whether or not "in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error."  *Taylor v. Comm'r of Soc. Sec. Admin*, 659 F.3d 1228, 1232 (9th Cir. 2011) (citing *Ramirez v. Shalala*, 8 F.3d 1449, 1451-54 (9th Cir. 1993)).  However, because this Court already has determined the Commissioner's decision should be reversed and remanded for further administrative proceedings, it is not necessary for the Court to reach these issues.  On remand, the Commissioner also should assess the medical evidence submitted to the Appeals Council, which relates to plaintiff's mental symptoms and limitations prior to the age of 22, and reassess plaintiff's eligibility for Disabled Adult Child benefits.

####     VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g), and not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

REPORT AND RECOMMENDATION - 19

1    Objections to this Report and Recommendation, if any, should be filed with the Clerk

2  and served upon all parties to this suit by no later than **November 14, 2014**.  Failure to file

3  objections within the specified time may affect your right to appeal.  Objections should be

4  noted for consideration on the District Judge's motion calendar for the third Friday after they

5  are filed.  Responses to objections may be filed within **fourteen (14)** days after service of

6  objections.  If no timely objections are filed, the matter will be ready for consideration by the

7  District Judge on **November 21, 2014**.

8    DATED this 31st day of October, 2014.

9

10 _James P. Donohue_
   _____

11 JAMES P. DONOHUE
   United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 20